SEYFARTH SHAW LLP
Andrew M. Paley (SBN 149699)
apaley@seyfarth.com
Ashley D. Stein (SBN 305094)
astein@seyfarth.com
Katherine R. Farr (SBN 355518)
kfarr@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:  (310) 277-7200
Facsimile:(310) 201-5219

Attorneys for Defendants
DEPLOYED SERVICES, LLC and
DEPLOYED RESOURCES, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL RODRIGUEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEPLOYED SERVICES, LLC, a Nevada limited liability company; DEPLOYED RESOURCES, LLC, a New York limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. **'25CV1936 BEN BLM**<br><br>**DEFENDANTS DEPLOYED SERVICES, LLC'S AND DEPLOYED RESOURCES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>(San Diego County Superior Court Case 25CU033792C)<br><br>Complaint Filed:  June 26, 2025<br>Trial Date:  None Set |

DEFENDANTS DEPLOYED SERVICES, LLC'S AND DEPLOYED RESOURCES, LLC'S NOTICE OF REMOVAL
319255314v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF MICHAEL RODRIGUEZ AND HIS COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that Defendants DEPLOYED SERVICES, LLC ("Deployed Services") and DEPLOYED RESOURCES, LLC ("Deployed Resources") (together "Defendants") hereby file this Notice of Removal pursuant to 28 U.S.C. §§ 1332(c), 1332(d)(2), 1441(a), 1446, and 1453, based on Class Action Fairness Act ("CAFA") jurisdiction and remove the above-captioned matter from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California. Removal is proper for the following reasons:

**I.      BACKGROUND AND PROCEEDINGS IN STATE COURT**

1.      On June 26, 2025, Plaintiff Michael Rodriguez ("Plaintiff") filed a class action Complaint in the Superior Court of California, County of San Diego, entitled "MICHAEL RODRIGUEZ, individually, and on behalf of other members of the general public similarly situated, v. DEPLOYED SERVICES, LLC, a Nevada limited liability company; DEPLOYED RESOURCES, LLC, a New York limited liability company; and DOES 1 through 10, inclusive." The Complaint was assigned San Diego County Superior Court Case No. 25CU033792C. A true and correct copy of the Complaint is attached to the Declaration of Ashley Stein ("Stein Decl.") as **Exhibit A**.

2.      On June 30, 2025, Plaintiff served the summons, Complaint, and other court documents on Defendants. A true and correct copy of the summons, Complaint, and other documents served on Defendants are attached to the Stein Decl. as **Exhibit B**.

3.      A true and correct copy of Defendants' Answer to the Complaint, filed on July 30, 2025 in San Diego Superior Court, is attached to the Stein Decl. as **Exhibit C.** No other filed pleadings or orders have been served on Defendants as of the date of this filing.

DEFENDANTS DEPLOYED SERVICES, LLC'S AND DEPLOYED RESOURCES, LLC'S NOTICE OF REMOVAL
319255314v.2

## II.    TIMELINESS OF REMOVAL

1.    The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

2.    The service of process which triggers the 30-day period to remove is governed by state law. *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

3.    This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendants' agent for service of process, on June 30, 2025. Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b). Thirty (30) days from the service of the Complaint on Defendant on June 30, 2025 is July 30, 2025.

4.    The Complaint alleges eleven (10) causes of action against Defendants, for: (1) Failure to Pay All Overtime Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Provide Rest Periods; (5) Wage Statement Violations; (6) Failure to Timely Pay Wages Upon Termination; (7) Failure to Timely Pay Wages During Employment; (8) Failure to Reimburse Business Expenses; (9) Unlawful Business Practices; and (10) Unfair Business Practices. (Exhibit ("Ex."). A, Complaint ("Compl.").)

3

5. The Complaint seeks to certify a class of "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California at any time from March 16, 2024 until the date of trial." (Ex. A, ¶ 39.)

## III. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

6. This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. Section 1332(d)(2). As set forth below, this action is properly removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original jurisdiction over the action, because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the action is a class action in which at least one putative class member is a citizen of a state different from that of a defendant. 28 U.S.C. §§ 1332(d)(2) & (d)(6).

### A. Plaintiff And Deployed Services Are Minimally Diverse

7. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a State different from any named defendant. 28 U.S.C. 1332(d)(2)(A); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties.

#### 1. Plaintiff Is a Citizen of California

8. For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust*

4

*Co. Americas*, 2013 WL 3474760, at \*3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

9. Plaintiff alleges that he "is a resident of Chula Vista, in San Diego County, California." (Ex. A, ¶ 4.) Plaintiff alleges wage and hour claims on behalf of himself and a putative class of "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California," contending that "Defendants employ persons in [San Diego County] and employed Plaintiff in this county." (Ex. A, ¶¶ 3, 39.)

10. As a part of Plaintiff's Application for Employment, Plaintiff listed a California address and maintained a California address on file for purposes of his personnel file, payroll checks, state payroll, and tax withholdings during the period of his employment. (Declaration of Tod Stephens ("Stephens Decl."), ¶ 5.) Plaintiff was employed by Deployed Services and actively worked at its location in California, from November 22, 2023 to October 30, 2024. (Id.) Plaintiff's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit against Defendants in San Diego County Superior Court. Accordingly, Plaintiff is a citizen of California for the purposes of diversity.

### 2. Defendant Is Not A Citizen of California

11. Defendant Deployed Services, LLC is not now, and has not been, at any time since the filing of this action, a citizen of the state of California within the meaning of 28 U.S.C. § 1332(c)(1).

12. For purposes of a "minimal diversity" class action, an unincorporated association is a citizen only of the state under whose laws it was organized or where it has its principal place of business. 28 U.S.C. § 1332(d)(10).

5

13.    Courts determine an entity's principal place of business under the "nerve center" test. *Hertz Corp. v. Friend*, 599 U.S. 77, 92-93 (2010). Under that test, an entity's principal place of business is where its "officers direct, control and coordinate the corporation's activities." *Id.* at 92. An entity typically directs and coordinates its activities from its headquarters. *Id.*

14.    Deployed Services, LLC was formed under the laws of the State of Nevada, with its principal place of business located outside of California. (Stephens Decl., ¶ 3-4.) Deployed Services, LLC's high-level executives reside in and control the operations of Deployed Services, LLC from several states and locations on the East Coast of the United States, including New Hampshire, South Carolina, Tennessee, and the Washington DC area. (*Id.*) None of Deployed Services, LLC's executive and administrative functions occur in California. (*Id.*) Deployed Services, LLC's principal place of business is located outside of California because its "nerve center" is located in several states and locations on the East Coast and not in California. (*Id.*)

Accordingly, because Plaintiff is a citizen of California and Defendant Deployed Services is not a citizen of California, diversity of citizenship exists between Plaintiff and Deployed Services for purposes of CAFA removal.

### 3.    Doe Defendants' Citizenship Must Be Disregarded

15.    The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (doe defendants need not join in removal); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal). Thus, Doe defendants 1 through 10 do not deprive this Court of jurisdiction.

DEFENDANTS DEPLOYED SERVICES, LLC'S AND DEPLOYED RESOURCES, LLC'S NOTICE OF REMOVAL
319255314v.2

**4.     All Defendants Properly Named And Served Have Consented To The Removal**

16.    Pursuant to 28 U.S.C. § 1446(b)(2)(A), "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Both named defendants, Deployed Services and Deployed Resources, join in this removal, thereby satisfying this requirement.

**B.     The Number of Putative Class Members Exceeds 100**

17.    CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

18.    Plaintiff seeks relief on behalf of a putative class comprised of "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California at any time from March 16, 2024 until the date of trial." (Ex. A, ¶ 39.) Additionally, Plaintiff alleges that there are over 100 class members. (Id. at ¶ 44(a).)

19.    During the alleged putative class period, approximately 851 non-exempt employees were employed in California by Deployed Services. (Stephens Decl., ¶ 7.) Deployed Services closed its California operations on March 21, 2025 when the federal government canceled its contract. (Id., ¶ 10.) Deployed Services therefore terminated the employment of all 851 hourly non-exempt California employees as of March 21, 2025. (Id.)

20.    Accordingly, the aggregated number of members of the putative class proposed by Plaintiff exceeds the 100 member requirement.

**C.     The Amount in Controversy Exceeds The Statutory Minimum**

21.    CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the

7

viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40. The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

### 1.    Preponderance Of The Evidence Standard.

22.    Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent. Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum. In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard. *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

23.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)." Pub.L. 112–63,

December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant"). The defendant must show that it is "more likely than not" that the jurisdictional threshold is met. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy [is met]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

24.     To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 554 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

25.     The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to

research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

26.     It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

27.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino,* 506 F.3d at 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

### 2. The Court May Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.

28.     If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought. She did not.

10

*Muniz*, 2007 WL 1302504, at \*4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at \*5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Arreola v. The Finish Line*, 2014 WL 6982571, \*4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

29.    Numerous other district courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at \*2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at \*3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "FMC engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at \*5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation

11

that would preclude a 100 percent violation rate."); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d. 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

30.    The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000. Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "[a]ll persons who worked for Defendants as non-exempt, hourly paid employees in California at any time from March 16, 2024 until the date of trial." (Ex. A, ¶ 39.)

31.    During the relevant time period identified in the Complaint, Deployed Services employed at least 851 non-exempt hourly employees in California, who worked a total of at least 29,824 workweeks. (Stephens Decl., ¶ 7.) The average hourly rate of pay for these individuals was approximately $20.24 per hour during the proposed class period. (Id.)

32.    Plaintiff seeks to recover, on behalf of himself and the alleged class, penalties for Defendants' alleged failure to pay all wages due upon resignation or termination of employment and failure to provide accurate and complete itemized wage statements. (Ex. A, Prayer for Relief.) Plaintiff also seeks attorneys' fees and costs. (Id.)

33.     As set forth below, the alleged amount in controversy implicated by the class-wide allegations exceeds $5,000,000. **All calculations supporting the amount in controversy are based on the Complaint's allegations, assuming, without any admission of the truth of the facts alleged and assuming solely for purposes of this Notice of Removal that liability is established.**

### 3.     Overtime and Minimum Wage Claims (Plaintiff's First and Second Causes of Action)

34.     Plaintiff's First And Second Causes of Action seek recovery for unpaid regular and overtime wages. (Compl. ¶¶ 45-64.) Plaintiff alleges that "Defendants had, and continue to have, a company-wide policy and/or practice requiring Plaintiff and class members to perform work-related tasks while off-the-clock outside of their shifts and during unpaid meal periods" (Id., ¶¶ 52, 61.) Plaintiff claims he and the putative class members were required to "report to work at the start of [their] scheduled shift[s], walk a few minutes to the timekeeping machine, then sometimes be required to wait in a line of employees for an additional few minutes before [they were]able to clock in, time for which [they were] not paid." (Id.) Plaintiff further claims that "Defendants' supervisors interrupted Plaintiff's and class members' meal periods and used that time to discuss work-related matters." (Id., ¶¶ 53, 62.)

35.     The statute of limitations for recovery for unpaid wages under California Labor Code sections 510 and 1194 is three years. Cal. Civ. Proc. Code § 338. The limitations period is extended to four years when a plaintiff also seeks restitution for the Labor Code violations under the UCL. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) (holding that "actions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation"). However, Plaintiff's Complaint limits the putative class period to the time period from March 16, 2024. (Compl. ¶ 39.) Therefore, the proposed class period for the first and second causes of action is from March 16, 2024 to the present.

36.     Pursuant to California Labor Code section 510, overtime is paid at 1.5x the base hourly wage for hours worked that are more than 8 but less than 12. Labor Code section 1194.2 provides for the recovery of liquidated damages for the failure to pay minimum wage equal to the amount of the unpaid wage.

37.     During the relevant time period identified in the Complaint, Deployed Services employed at least 851 non-exempt employees in California, who worked a total of at least 29,824 workweeks. (Stephens Decl., ¶ 7.) The average last hourly rate of pay earned by Deployed Services' California non-exempt employees during this time period was approximately $20.24. (Id.) In 2024, the minimum wage in California was $16.  In 2025, the minimum wage in California is $16.50. San Diego, however, has its own minimum wage ordinance. Pursuant to The City of San Diego's Earned Sick Leave and Minimum Wage Ordinance, San Diego Municipal Code (SDMC) Chapter 3, Article 9, Division 1, the minimum wage in San Diego in 2024 was $16.85. In 2025, the minimum wage in San Diego was $17.25.

38.     While Plaintiff does not elaborate on what constitutes a "few minutes," based on a conservative estimate of just 20 minutes of unpaid overtime wages per employee each week (i.e. 4 minutes per day), the amount in controversy for the off-the-clock claim is at least **$469,330** [(20 minutes x [$20.24/hour x 1.5] x 29,824 workweeks = **$301,819** for unpaid overtime) + (20 minutes x $16.95/hour[1] x 29,824 workweeks = **$167,511** for liquidated damages for unpaid minimum wages)].

---

[1] A minimum wage of $16.95 is used becuase this is a weighted average of the San Diego City minimum wages in 2024 and 2025, based on the number of months in each year in the class period. Based on the claimed class period from March 16, 2024 to March 21, 2025, nine months of the class period occurred in 2024 when the San Diego City minimum wage was $16.85, and three months of the class period occurred in 2025 when the San Diego City minimum wage was $17.25. Therefore, ($16.85 x 9) + ($17.25 x 3) = $203.40, divided by 12 = $16.95 per hour.

14

**4. Meal and Rest Period Claims (Plaintiff's Third and Fourth Causes of Action)**

39. Plaintiff seeks payments for alleged denial of or missed or interrupted meal periods and rest periods. (Ex. A, ¶¶ 27-28.) Plaintiff's Complaint alleges that "Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period." (Id. at ¶ 27.) Plaintiff further alleges that "Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their jobsites while assigning heavy workloads, which has resulted in a lack of meal period coverage and prevented Plaintiff and class members from taking all timely, compliant meal periods to which they were entitled." (Id. at ¶ 69.) Plaintiff also alleges that "Defendants had a company-wide practice and/or policy of failing to adhere to a schedule for meal periods, which further caused Plaintiff and class members to not be relieved of their duties for compliant meal periods." (Id.) Finally, Plaintiff alleges that "Defendants engaged in a company-wide practice and/or policy of not paying meal period premiums owed when compliant meal periods are not provided." (Id. at ¶ 72.)

40. For these alleged meal period violations, Plaintiff seeks "(1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided," "premiums pursuant to California Labor Code section 226.7(c)," "pre-judgment interest," and "attorneys' fees pursuant to California Code of Civil Procedure section 1021.5." (Ex. A, Prayer for Damages, ¶¶ 16-22.)

41. Plaintiff's Complaint further alleges that "Plaintiff and class members were not authorized and permitted to take compliant rest periods, nor did Defendants provide Plaintiff and class members with payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period." (Id. at ¶ 28.) Plaintiff claims that "Defendants maintained a company-wide on-premises rest period policy, which effectively required that Plaintiff and class members remain on the facility premises during their rest periods," and that "[a]s a result of

15

Defendants' practices and policies, Plaintiff and/or class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all compliant rest periods to which they were entitled." (Id. at ¶ 78.) Plaintiff further alleges that "Defendants also have engaged in a company-wide practice and/or policy of not paying rest period premiums owed when compliant rest periods are not authorized and permitted. Because of this practice and/or policy, Plaintiff and class members have not received premium pay for all missed rest periods." (Id.)

42.     For these alleged rest period violations, Plaintiff seeks "(1) hour of pay at each employee's regular rate of pay for each workday that a rest period was not authorized and permitted," "premiums pursuant to California Labor Code section 226.7(c)," "pre-judgment interest," and "attorneys' fees pursuant to California Code of Civil Procedure section 1021.5." (Ex. A, Prayer for Damages, ¶¶ 23-29.)

43.     California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ." California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods. Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

44.     The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years. *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute

16

of limitations."). However, Plaintiff defines the putative class period as starting on March 16, 2024.

45. Plaintiff is silent as to the amount of alleged meal periods or rest periods he claims to have been denied, thereby precluding precise estimates of the amount in controversy. However, Plaintiff alleges that Defendants had a "company-wide policy and/or practice" of not providing Plaintiff and the putative class with all meal periods and rest breaks. (Ex. A, ¶¶ 27-28, 65-80.) Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal period claims. *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%"); *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period violations per week reasonable where plaintiff alleged a "a policy and practice" of meal and rest break violations); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods. Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations…").

46. While Defendants are entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, Defendants will conservatively assume that putative class

17

members were not provided just two meal periods and two rest periods each week. Where Plaintiff has alleged a policy and practice of meal period and rest break violations, it is reasonable to assume that there are at least two meal periods violation and two rest breaks violation each week for every employee. Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods).

47. As stated above, during the relevant time period identified in the Complaint, Deployed Services employed at least 851 non-exempt, hourly employees in California from March 16, 2024 through March 21, 2025, who worked a total of at least 29,824 workweeks. (Stephens Decl., ¶ 7.) The average hourly rate of pay for these individuals was approximately $20.24 per hour during the proposed class period. (Id.)

48. Although Defendants deny that Plaintiff (or any putative class member) is entitled to any meal or rest period premium payments, assuming **just two meal periods violation and two rest periods violation per week** for each putative class member, the amount in controversy would be approximately $2,414,552 [(29,824 workweeks) x ($20.24 per hour) x (4 premium payments each week)]. Accordingly, the amount in controversy on Plaintiff's meal and rest period claims is approximately **$2,414,552**.

**5.  Wage Statement Penalties (Plaintiff's Fifth Cause of Action)**

49.  Plaintiff's Complaint alleges that "[a]t all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements. For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: total hours worked; gross wages earned; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages and/or meal and rest period premiums, and the corresponding number of hours worked at each hourly rate." (Ex. A, ¶ 83.) Based on this alleged violation, Plaintiff claims that "Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee." (Id. at ¶ 89.)

50.  Labor Code section 226(e) provides a minimum of $50 for the initial violation as to each employee, and $100 for each further violation as to each employee, up to a maximum penalty of $4,000 per employee. The statute of limitations for recovery of penalties under Labor Code section 226 is one year. *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a). Plaintiff filed his Complaint on June 26, 2025. Therefore, the statutory period for a claim under California Labor Code section 226 runs from June 26, 2024 to the present.

51.  Defendant Deployed Services paid its non-exempt employees on a weekly basis during the putative class period. (Stephens Decl., ¶ 7.) Accordingly, there were 52 pay periods per year. (Id.)

52.  During the period from June 26, 2024 to March 21, 2025, Deployed Services employed at least 851 non-exempt hourly California employees. (Stephens Decl., ¶ 8.) These individuals worked at least 20,735 weekly pay periods during this time period. (Id.) Thus, the amount in controversy for Plaintiff's wage statement claim is **$2,037,100**

19

[($50 for the 851 first pay periods) + ($100 for each of the subsequent pay periods, not counting pay periods that would cause an employee to exceed the $4,000 cap)].

### 6.    Waiting Time Penalties (Plaintiff's Sixth Cause of Action)

53.    Plaintiff's Complaint also alleges that Defendants failed to timely pay wages due, in violation of California Labor Code sections 201 to 203. Plaintiff alleges that "Defendants have a company-wide practice and/or policy of paying departing employees their final wages late, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202." (Ex. A, ¶ 92.)

54.    As a result, Plaintiff's Complaint alleges that "Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203." (Id. at ¶ 94.)

55.    Under California Labor Code section 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay. *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

56.    The statute of limitations period for California Labor Code section 203 penalties extends back only three years from the date of filing of the complaint, to December 31, 2021. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty"). But, again, Plaintiff defines the putative class period to begin as of March 16, 2024.

57.    As Deployed Services shut down its California operations and terminated the employment of all of its California based employees by March 21, 2025, it is

20

reasonable to assume that each employee has waited more than 30 days for payment of any allegedly unpaid wages. *See Tajonar v. Echosphere*, LLC, 2015 WL 4064642, at *4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

58.   During the relevant time period for waiting time penalties, from March 16, 2024 to the present, Deployed Services had at least 851 non-exempt hourly employees in California who separated from employment. (Stephens Decl., ¶ 10.)

59.   Although Defendants dispute liability, a reasonable estimate of the amount in controversy for waiting time penalties is **$4,133,818** [$20.24/hour x 8 hours/day[2] x 30 days x 851 former hourly employees].

### 7.   Failure to Timely Pay Wages (Plaintiff's Seventh Cause of Action)

60.   Plaintiff alleges that "Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, and/or meal and rest period premiums, within the time periods specified by California Labor Code section 204," and that as a result "Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210." (Ex. A, ¶¶ 99, 100.)

61.   Labor Code section 210 outlines the remedy for violations of Labor Code section 204, providing an employee a minimum of $100.00 for each failure to pay an employee per the requirements of the statute for an initial violation, and $200.00 per failure to timely pay an employee for a subsequent violation or a willful or intentional violation, plus 25% of the amount unlawfully withheld. A "violation" is a finding of wrongdoing by a court or state agency. The statute of limitations for penalties under Labor Code section 210 is one year. Cal. Civ. Proc. Code § 340(a).

---

[2] The average shift length was approximately 8 hours per day. Stephens Decl. ¶ 10.

62.    Since June 26, 2024 the total number of semi-monthly pay days applicable to the putative class members in California was approximately 9,929. (Stephens Decl. ¶ 8.) Plaintiff included no limitation on the number of alleged violations related to timely payment of wages, and in fact, his allegations support that he is contending that he and the putative class members did not receive all wages owed each pay period. Because there is no prior finding of wrongdoing, the proper calculation of the potential exposure on this claim is calculated using $100 per pay period for an "initial violation."  Thus, the amount in controversy for the Labor Code 204 / 210 claim is **$992,900**.

### 8.    Attorneys' Fees

63.    Plaintiff also seeks attorneys' fees. (Ex. A, Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

64.    A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

65.    In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d

22

785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."); *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (holding that "unaccrued post-removal attorneys' fees can be factored into the amount in controversy" for CAFA jurisdiction).

66.    Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy," including in the context of determining CAFA jurisdiction and as a "principle[] that appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

67.    In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]he 25% benchmark provides a non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of

23

42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, 2010 U.S. Dist. LEXIS 86920 at *16-18 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable); *see also In re Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class action settlement context the benchmark for setting attorneys' fees is 25 percent of the common fund). Even under the conservative benchmark of 25 percent of the total amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of **$2,511,925** in this case [**$10,047,700** amount in controversy x 0.25].

68.    Although Defendants deny Plaintiff's allegations that he or the putative class are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a conservative estimate based on those allegations, the total amount in controversy is at least **$12,559,625**, including attorneys' fees.  This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

69.    Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

70.    To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

### 9.    Summary of Amount in Controversy for Purposes of Removal

71.    In addition to the claims above, Plaintiff also alleges claims for, expense reimbursements, and unfair competition.  Even without considering these claims, or potential interest on the unpaid wage claims, Plaintiff's claims easily satisfy the amount

in controversy requirement. Assumptions based on the allegations in the Complaint for just the above-discussed claims, alone, easily put at issue the following amounts:

| Claim | Amount In Controversy By Plaintiff's Allegations |
|---|---|
| 1. Overtime and Minimum Wage Claim | $469,330 |
| 3. Meal Period Claim | $1,207,276 |
| 4. Rest Period Claim | $1,207,276 |
| 2. Labor Code § 226 | $2,037,100 |
| 5. Labor Code § 203 Claim | $4,133,818 |
| 1. Labor Code § 204 / 210 | $992,900 |
| Sub-Total | $10,047,700 |
| 3. Attorneys' Fees (25%) (on the above claims only) | $2,511,925 |
| Total (on the above claims only) | $12,559,625 |

Because diversity of citizenship exists, and the amount in controversy plainly exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

**IV.    VENUE**

72.    Venue lies in the United States District Court, Southern District of California pursuant to 28 U.S.C. §§ 84(d), 1441 and 1446(a). This action was originally in the Superior Court of the State of California, County of San Diego. The County of San Diego is within the jurisdiction of the United States District Court, Southern District of California.

**V.    NOTICE OF REMOVAL**

73.    A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of San Diego, pursuant to 28 U.S.C. § 1446(d).

25

## VI.    PRAYER FOR REMOVAL

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

DATED: July 30, 2025                    Respectfully submitted,

SEYFARTH SHAW LLP


By: _____
                    Andrew M. Paley
                    Ashley D. Stein
                    Katherine R. Farr
                 Attorneys for Defendants
              DEPLOYED SERVICES, LLC and
              DEPLOYED RESOURCES, LLC

26

DEFENDANTS DEPLOYED SERVICES, LLC'S AND DEPLOYED RESOURCES, LLC'S NOTICE OF REMOVAL
319255314v.2